UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARANATHA CHRISTIAN CHURCH OF AMERICA, INC. d/b/a MARANATHA CHRISTIAN CHURCH and IGREJA CRISTÃ MARANATA-PRESBITÉRIO ESPÍRITO SANTENSE, | : : : : : : : : : : : : : : : : : |
| Plaintiffs, | |
| v. | |
| BETO MORAES; MULTICULTURAL RADIO BROADCASTING, INC.; and MULTICULTURAL RADIO BROADCASTING LICENSEE, LLC, | |
| Defendants. | |

CIVIL ACTION NO.

## COMPLAINT

The plaintiffs, Maranatha Christian Church of America, Inc. d/b/a Maranatha Christian Church and Igreja Cristã Maranata-Presbitério Espírito Santense (collectively "Maranatha"), for their Complaint against the defendants, Beto Moraes, Multicultural Radio Broadcasting, Inc., and Multicultural Radio Broadcasting Licensee, LLC allege as follows:

## NATURE OF THE ACTION

1.  This is an action for libel, slander, and negligence under the common law of the Commonwealth of Massachusetts.

2.  Beto Moraes ("Moraes") defamed Maranatha by publishing false, malicious and defamatory material on his website and on the radio.

3.  Multicultural Radio Broadcasting, Inc. and Multicultural Radio Broadcasting Licensee, LLC (collectively "Multicultural Radio") provided Moraes with air-time on its radio

1

station, WLYN 1360AM, during which time Moraes slandered Maranatha. Multicultural Radio, acting with reckless disregard for the truth, allowed Moraes to continue slandering Maranatha even after Maranatha informed Multicultural Radio about Moraes' tortious activities.

## THE PARTIES

4. Maranatha Christian Church of America, Inc. d/b/a Maranatha Christian Church is a religious corporation organized under the laws of the State of Connecticut having a principal place of business at 12 Chapel Street, Wallingford, Connecticut.

5. Igreja Cristã Maranata-Presbitério Espírito Santense is a religious corporation organized under the laws of Brazil having a principal place of business at Rua Torquato Laranja No. 90, Centro-Vila Velha, Espírito Santo, Brazil.

6. Beto Moraes is an individual citizen of the Commonwealth of Massachusetts residing at 9 Main Street, Acton, Massachusetts.

7. Multicultural Radio Broadcasting, Inc. is a corporation organized under the laws of the State of New Jersey having a principal place of business at 27 William Street, 11th Floor, New York, New York, and owning and operating radio station WLYN 1360AM in Woburn, Massachusetts.

8. Multicultural Radio Broadcasting Licensee, LLC is a limited liability corporation organized under the laws of the State of Delaware and having a principal place of business at 27 William Street, 11th Floor, New York, New York, and owning and operating radio station WLYN 1360AM in Woburn, Massachusetts.

## JURISDICTION AND VENUE

9. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000.00, exclusive of interest and

costs, and is between citizens of different states and in which citizens or subjects of a foreign state are additional parties.

10. Venue is proper within this judicial district pursuant to 28 U.S.C. 1391(b) in that a substantial part of the events or omissions giving rise to this claim occurred within this judicial district and in that all defendants reside within this judicial district.

11. This Court has personal jurisdiction over Moraes because he is a citizen of the Commonwealth of Massachusetts and is subject to general jurisdiction in this Court. This Court also has jurisdiction over Moraes because the causes of action alleged arise from Moraes (1) transacting business within this commonwealth and (2) causing tortious injury by an act or omission in this commonwealth.

12. This Court has personal jurisdiction over Multicultural Radio Broadcasting, Inc. because the causes of action alleged arise from Multicultural Radio Broadcasting, Inc.'s (1) transacting business in this commonwealth, (2) contracting to supply services or things in this commonwealth, (3) causing tortious injury by an act or omission in this commonwealth, and (4) causing tortious injury in this commonwealth and (i) regularly doing business and (ii) deriving substantial revenue from services rendered in this commonwealth.

13. This Court has personal jurisdiction over Multicultural Radio Broadcasting Licensee, LLC because the causes of action alleged arise from Multicultural Radio Broadcasting Licensee, LLC's (1) transacting business in this commonwealth, (2) contracting to supply services or things in this commonwealth, (3) causing tortious injury by an act or omission in this commonwealth, and (4) causing tortious injury in this commonwealth and (i) regularly doing business and (ii) deriving substantial revenue from services rendered in this commonwealth.

## **COUNT ONE – LIBEL (AGAINST MORAES)**

14. Paragraphs 1-13 are hereby incorporated by reference as if fully set forth herein.

15. Maranatha is a Christian church that exists on a nonprofit basis to propagate the gospel and to provide religious services for its members in accordance with the teachings of the Bible.

16. Maranatha is not a public figure.

17. On or about November 24, 2012, Moraes published a defamatory article in Portuguese on his website, betomoraes.com, entitled "Maranatha Church Misappropriates Tithes of the Faithful" ("the Article").

18. In the Article, Moraes published false and defamatory statements, including, but not limited to:

    a. that Maranatha in America receives $1,000,000 per year in contributions from its members in Massachusetts, including $40,000 per month, or $500,000 per year, from just two congregations in the cities of Framingham and Everett;

    b. that Maranatha in America sends all of the contributions of its members to Maranatha in Brazil;

    c. that Maranatha churches in America do not use its members' contributions for church operational expenses, but instead collect additional money from its members to make a separate "kitty" from which to pay for such expenses;

    d. that Maranatha exploits the faith of its members in order to collect money;

    e. that no one in Maranatha in America can account for what happens to the contributions because the wife of the treasurer is the one who audits the treasurer;

      f.      that Maranatha contributions in America are sent to Brazil in illegal ways, using illegal exchange agencies that launder money for organized crime;

      g.      that Maranatha currently pays above-market prices for products and services and pays false invoices; and

      h.      that "the remittances of money made by Maranatha Christian Church in the United States to the headquarters of the church in Brazil were always done in an irregular way, using businesses that would benefit from the exchange of dollars."

19.      By publishing the foregoing statements on betomoraes.com, Moraes published defamatory statements to a wide range of persons in the public via the Internet.

20.      Moraes caused the Article and the defamatory statements therein to be re-published in other on-line and print media.

21.      The foregoing statements were and are wholly false and untrue and defamed Maranatha.

22.      Moraes negligently published the foregoing statements about Maranatha, causing Maranatha to suffer damages.

23.      Moraes purported to have an unnamed "source," John Doe, upon whom he based the foregoing statements.

24.      Upon information and belief, either John Doe does not exist or Moraes conspired with John Doe purposely to defame Maranatha.

25.      After Moraes published the Article, Maranatha wrote a letter to Moraes identifying the false and defamatory nature of Moraes' statements and demanding that he take down the Article and issue a retraction.

26. Moraes refused to take down the Article or issue a retraction; instead he reaffirmed the defamatory statements in the Article by vouching for its veracity on his radio program.

27. Moraes published the foregoing statements with knowledge that the statements were false, or with reckless disregard as to the falsity of the statements.

28. Moraes' defamatory statements injured the reputation of Maranatha.

### COUNT TWO – SLANDER (AGAINST MORAES)

29. Paragraphs 1 through 28 are hereby incorporated by reference as if fully set forth herein.

30. Moraes buys air-time on WLYN 1360AM, during which time he promotes his website, betomoraes.com, and discusses various topics.

31. Beginning on or about November 24, 2012, and in anticipation of publishing the Article, Moraes published false and defamatory statements regarding Maranatha during his radio broadcasts and referred listeners to his website for more information. These false and defamatory statements include, but are not limited to:

   a. that when Maranatha needs to buy a pack of matches, its asks its members to make a "kitty" instead of using normal collection money;

   b. that Maranatha in Brazil is under investigation for sending 300 million dollars to offshore bank accounts;

   c. that the leaders of Maranatha are connected to child trafficking and drug trafficking;

   d. that the current president of Maranatha in Brazil is protecting the former vice-president from an investigation into allegations that the vice-president embezzled church money;

      e.      that Maranatha exploits the faith of its members to collect money;

      f.      that if asked, no one in Maranatha in America will be able to tell church members what is done with their tithe money because the auditor of Maranatha's accounts is the wife of the treasurer;

      g.      that Maranatha makes false receipts to justify secret expenditures;

      h.      that church members' tithes are being sent to offshore bank accounts in Europe and Central America;

      i.      that money is sent from Maranatha in America to Maranatha in Brazil through illegal exchange agencies, and there the money is laundered for organized crime in Brazil, which supports trafficking of children and drugs;

      j.      that the money that the church member contributes as his tithe is used to launder the money used for organized crime in Brazil;

      k.      that the IRS would confiscate everything from Maranatha in America if it knew what was going on;

      l.      that money collected from church members is not used for anything inside the church or for its members, but is instead used in money laundering for organized crime;

      m.      that one of the Maranatha churches in Connecticut recently closed because the members are scandalized and fearful, and many people have stopped giving their tithes because they do not know what is being done with their contributions;

      n.      that church leaders buy convertible Lamborghinis with church members' money;

      o.      that Maranatha currently pays inflated prices for products and services and pays false invoices;

      p.    that Maranatha is being used as a curtain or a mask to conceal fraud and crime; and

      q.    that the foregoing statements are the truth and that Moraes' listeners will know everything when they read his article at betomoraes.com and listen to his radio broadcast every day during the following week.

32. By publishing the foregoing statements on WLYN 1360AM, Moraes published defamatory statements to a wide range of persons in the public via the radio.

33. The foregoing statements were and are wholly false and untrue and defamed Maranatha.

34. The foregoing statements slandered Maranatha *per se* (a) because they prejudiced Maranatha in its office, professional honesty and intregity, or business or may probably have tended to do so and (b) because they charged Maranatha with crimes.

35. Moraes negligently published the foregoing statements about Maranatha, causing Maranatha to suffer damages.

36. Moraes purported to have an unnamed "source," John Doe, upon whom he based the foregoing statements.

37. Upon information and belief, either John Doe does not exist or Moraes conspired with John Doe purposely to defame Maranatha.

38. After Moraes published the foregoing statements over the radio, Maranatha wrote a letter to Moraes identifying the false and defamatory nature of Moraes' statements and demanding that he issue a retraction.

39. Moraes refused to issue a retraction. Instead, Moraes re-published and reaffirmed the foregoing statements on the radio and said that Maranatha could not silence him.

40. Moraes published the foregoing statements with knowledge that the statements were false, or with reckless disregard as to the falsity of the statements.

41. Moraes' defamatory statements injured the reputation of Maranatha.

## COUNT THREE – SLANDER (AGAINST MULTICULTURAL RADIO)

42. Paragraphs 1 through 41 are hereby incorporated by reference as if fully set forth herein.

43. Multicultural Radio professes to market radio air-time to producers of programs that focus on specific ethnic cultures.  Multicultural Radio specifically markets its services to producers who want to broadcast programs in foreign languages, such as Brazilian Portuguese.

44. Multicultural Radio collectively owns and operates WLYN 1360AM.

45. Multicultural Radio sold Moraes air-time on WLYN 1360AM during which time Moraes slandered Maranatha.

46. After Moraes published the defamatory statements over the radio, Maranatha wrote a letter to Multicultural Radio identifying the false and defamatory nature of Moraes' statements and demanding that Multicultural Radio publish a retraction and restrain Moraes from defaming Maranatha in the future.

47. Multicultural Radio denied any responsibility for Moraes' actions, refused to publish a retraction and refused to instruct Moraes to cease defaming Maranatha.

48. Multicultural Radio represented that it does not require an advanced script from producers and that it refuses to exercise any control or oversight over what its producers say, regardless of whether or not it is defamatory.  These representations are true.

49. Upon information and belief, after Maranatha's letter, Multicultural Radio took no action to investigate Maranatha's claims or to determine whether Moraes was publishing false and

defamatory statements over its radio station and took no action to prevent Moraes from doing so in the future.

50.  After Maranatha's letter, Moraes re-published and reaffirmed the false and defamatory statements on WLYN 1360AM and said that Maranatha could not silence him.

51.  Multicultural Radio had the ability to prevent Moraes from publishing the false and defamatory statements over its radio station.

52.  Multicultural Radio refused to prevent Moraes from publishing the false and defamatory statements over its radio station with knowledge that Moraes' statements were false or with reckless disregard as to the falsity of Moraes' statements.

53.  Multicultural Radio transmitted and delivered Moraes' defamatory statements with knowledge of or with reason to know of its defamatory character.

54.  The defamatory statements injured the reputation of Maranatha.

**COUNT FOUR – NEGLIGENCE (AGAINST MULTICULTURAL RADIO)**

55.  Paragraphs 1 through 54 are hereby incorporated by reference as if fully set forth herein.

56.  Multicultural Radio knew or had reason to know that it had the ability to control Moraes by preventing him from using WLYN 1360AM.

57.  After Maranatha's letter, Multicultural Radio knew or should have known of the necessity and opportunity for it to control Moraes and prevent him from defaming Maranatha through the facility of WLYN 1360AM.

58.  As the owner and operator of WLYN 1360AM, Multicultural Radio had a duty to exercise reasonable care so as to control the conduct of Moraes, whom Multicultural Radio allowed to use the radio station, to prevent Moraes from intentionally harming others.

59.     Multicultural Radio breached its duty of care by negligently refusing to control the conduct of Moraes to prevent Moraes from intentionally defaming Maranatha through the facility of WLYN 1360AM.

60.     Multicultural Radio's negligence includes, but is not limited to:

a.      refusing to require producers, such as Moraes, to provide Multicultural Radio with scripts or summaries of its programming, even after receiving complaints about its producers' slanderous conduct;

b.      refusing to monitor or censor producers, such as Moraes, even after receiving complaints about its producers' slanderous conduct;

c.      refusing to require producers, such as Moraes, to promise to cease publishing defamatory statements over its radio station, even after receiving complaints about its producers' slanderous conduct; and

d.      allowing producers, such as Moraes, to continue purchasing air-time, even after receiving complaints about its producers' slanderous conduct.

61.     Multicultural Radio's negligence proximately caused damage to Maranatha's reputation.

## PRAYER FOR RELIEF

WHEREFORE, Maranatha prays for the following:

1.      Money damages;

2.      Punitive damages;

3.      Prejudgment interest;

4. An order enjoining Moraes from continuing to post the Article on betomoraes.com and commanding that Moraes permanently remove the Article from betomoraes.com and from any other on-line media;

5. An order that Moraes and/or Multicultiral Radio publicly retract on the air at WLYN 1360AM Moraes' slanderous statements at least over the same number of days in which Moraes broadcast such statements on the air; and

6. Such other relief as this Court deems just and proper.

## JURY DEMAND

Maranatha requests a trial by jury of any issue so triable as of right pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Respectfully submitted by,

Maranatha Christian Church of America, Inc. d/b/a Maranatha Christian Church and Igreja Cristã Maranata-Presbitério Espírito Santense

By their Attorneys,

*/s/ David A. Barry*
David A. Barry, BBO No. 031520
barry@srbc.com
William F. Benson, BBO No. 646808
benson@srbc.com
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street, 9th Floor
Boston, MA 02114
(617) 227-3030

Of Counsel:

James K. Robertson, Esq.
jrobertson@carmodylaw.com
Carmody & Torrance LLP
50 Leavenworth Street
Waterbury, CT 06721
(203) 573-1200

John L. Cordani, Jr., Esq.
jcordanijr@carmodylaw.com
Carmody & Torrance LLP
195 Church Street
New Haven, CT 06509
(203) 777-5501

Dated: February 14, 2013

4840-0058-7026, v. 1